UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANICE L. NERURKAR,             ) | |
|           ) | |
|         Plaintiff,    ) | Case No. C09-1541-RAJ-BAT |
|           ) | |
|   v.           ) | **REPORT AND** |
|           ) | **RECOMMENDATION** |
| MICHAEL ASTRUE, Commissioner of the  ) | |
| Social Security Administration,     ) | |
|           ) | |
|        Defendant.    ) | |

Plaintiff Janice Nerurkar seeks review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration. Dkt. 3 at 1. She argues that the Administrative Law Judge ("ALJ") erred by (1) failing to consider her impairments in combination at step two, (2) giving no weight to medical evaluations submitted after her date last insured, (3) improperly assessing lay testimony, and (4) failing to call a medical expert to address her onset date. Dkt. 10 at 1. For the reasons set forth below, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff is 56 years old and has attended college for two years. She last worked in 2005; her last long-term employment was in 1999. Tr. 45. On November 2, 2006, she applied for disability insurance benefits alleging disability due to Bell's palsy, neuropathy, asthma, allergies, Raynaud's syndrome, osteoarthritis, hypoglycemia, depression, anxiety, vision problems,

REPORT AND RECOMMENDATION – 1

1   migraines, disassociative disorder, a thyroid condition, and autoimmune deficiency, with an

2   alleged onset date of September 1, 1999.   Tr. 139-41, 154.   Her application was denied initially

3   and on reconsideration.   Tr. 9.   After a hearing conducted on March 30, 2009, at which plaintiff

4   amended the alleged onset date to June 1, 2005, *id.*, the ALJ issued a decision on May 18, 2009

5   finding plaintiff not disabled, Tr. 6-15.   On July 24, 2009, the Appeals Council denied review of

6   that decision, making it the Commissioner's final decision under 42 U.S.C. § 405(g).   Tr. 3.

## II.  THE ALJ'S DECISION

8        Applying the five-step[1] sequential evaluation process for determining whether a claimant is

9   disabled, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity

10   since June 1, 2005, the alleged onset date.   Tr. 11.

11        At step two, the ALJ found that plaintiff did not have a severe impairment or combination

12   of impairments that significantly limited her from performing basic work activities and was

13   therefore not under a disability from her alleged onset date through December 31, 2005, the date

14   last insured. Tr. 11-12, 14-15.

## III.  STANDARD OF REVIEW

16        This Court may set aside the Commissioner's denial of disability benefits when the ALJ's

17   findings are based on legal error or not supported by substantial evidence.   42 U.S.C. § 405(g);

18   *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).   "Substantial evidence" is more than a

19   scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might

20   accept as adequate to support a conclusion.   *Richardson v. Perales*, 402 U.S. 389, 201 (1971);

21   *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).   The ALJ is responsible for determining

22   credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that

23

[1] *See* 20 C.F.R. §§ 404.1520, 416.920.

REPORT AND RECOMMENDATION – 2

might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold.  *Id.*

## IV.  DISCUSSION

### A.  The ALJ's Step Two Analysis

At step-two of the sequential disability analysis, the ALJ must determine whether a claimant has a "severe medically determinable physical or mental impairment … or combination of impairments."  20 CFR 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1508.  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 CFR 404.1520(c).

To be medically determinable, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings.  *Id.*  Signs are anatomical, physiological, or psychological abnormalities that can be observed, apart from the claimant's statements; signs must be shown by observable facts that can be medically described and evaluated.  20 C.F.R. § 404.1528(b).  Symptoms are the claimant's own descriptions of his physical or mental impairment.  20 C.F.R. § 404.1528(a).  However, a claimant's statement of symptoms alone is not enough to establish a physical or mental impairment.  20 C.F.R. § 404.1508, 404.1528(a).  A claimant bears the burden of showing that she has a medically determinable severe impairment or combination of impairments prior to her date last insured.  *See*

§ 404.1520(a)(4)(ii).

An ALJ's finding that an impairment or combination of impairments is not severe must be "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing Social Security Regulation ("SSR") 85-28 (1985)). An ALJ may find an impairment or combination of impairments "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). "[A] claimant's illnesses must be considered in combination and must not be fragmentized in evaluating their effects." *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987) (internal quotations omitted). Step two is therefore a "de minimis screening device" used to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

In this case, the ALJ found that Plaintiff did not have any severe impairments or combination of impairments that significantly limited her ability to perform basic work related activities. Tr. 12. Specifically the ALJ found that:

(a) plaintiff had been diagnosed with Bell's palsy;

(b) The medical evidence between the date of onset and last date insured did not support diagnoses of Raynaud's phenomenon, neuropathy, asthma and migraines;

(c) The medical evidence preceding the onset date supported diagnoses for asthma and migraines, but that there was no indication they caused vocational limitations during the time period at issue;

(d) In 1976, plaintiff was treated for cervical carcinoma and mild osteoarthritis, but there was no documentation of significant impairment;

(e) During the time period at issue in the case, the medical evidence did not support any vocational limitations associated with Bells palsy, Raynaud's syndrome, neuropathy, asthma, or migraines.

Tr. 11-12.

REPORT AND RECOMMENDATION – 4

Plaintiff argues that the ALJ erred at step two in three different ways.  First, plaintiff contends that "the ALJ failed to examine the combined effects of all of plaintiff's impairments, which includes Bells [sic] palsy, dizziness, asthma, depression, Raynaud's phenomenon, chronic insomnia and neck pain with spasms."  Dkt. 10 at 11.  Second, she claims that the ALJ erred in giving no weight to the evaluations of Dr. Curtis H. Holder, M.D., and Dr. Kent Ta, M.D. diagnosing her with depression, anxiety, disassociative disorder, and fibromyalgia.  *Id*. at 12 (citing Tr. 14).  Finally, she asserts that the ALJ erred in failing to address the testimony of her husband when assessing the severity of her impairments.  *Id*. at 11.  Defendant argues in turn that the ALJ's finding at step two was supported by the record, which showed no evidence that plaintiff's impairments caused significant vocational limitations during the claimed period.  Dkt. 14 at 4.  These contentions center on the ALJ's step two determination that plaintiff did not have a medically determinable severe impairment.

The Court concludes that the ALJ erred in various ways at step two.  The ALJ's ultimate finding, that the record did not support any significant vocational limitations associated with plaintiff's various impairments during the period in question, is not supported by substantial evidence.

**1.  The Combined Effects of Plaintiff's Impairments**

Plaintiff first argues that the ALJ should have considered her various impairments as a whole in determining whether she had a medically determinable severe impairment at step two.  Dkt. 10 at 11.  Defendant asserts that the ALJ's finding is correct because plaintiff "failed to produce any objective medical evidence of impairment or limitation" during the claimed period.  Dkt. 14 at 8.

Plaintiff's contention necessarily challenges the ALJ's finding that the record did not support diagnoses of Raynaud's phenomenon, neuropathy, asthma, and migraines during the claimed

REPORT AND RECOMMENDATION – 5

period.  Tr. 12.  The ALJ's finding regarding neuropathy, asthma, and migraines is supported by

the medical evidence; for example, in June of 2005, plaintiff's medical exam specifically noted

that she denied headaches and had "no shortness of breath, wheezing, chest pain, or palpitation."

Tr. 365; *see also* Tr. 395.  Records from later that year, and her general exam from July of 2006,

do not discuss migraines or asthma at all.  Tr. 475-77.  There is no diagnosis, or even a mention, of

neuropathy at any time in the record.

     The ALJ also stated that "[m]edical evidence during the time period at issue … does not

contain objective findings to support" the diagnoses of Raynaud's phenomenon.  Tr. 12.

However, plaintiff was initially diagnosed with Raynaud's phenomenon on February 11, 2003;

those records note that when she was exposed to extremes of heat or cold her hands would turn

"completely cold, bluish in nature" from "about mid-hand region down to her fingertips."[2]  Tr.

369.  In June of 2005, an examining physician noted that although plaintiff did have Raynaud's

phenomenon, "there is not much we can do for it at this time."  Tr. 365.  These records do state

that "blood testing has been negative," *id.*; however, this statement presumably refers to the fact

that Raynaud's phenomenon is diagnosed by elimination of other possible causes of the symptoms

through testing.

     The ALJ cites to orthopedist Dr. Paul Williams' examination of plaintiff in April of 2006 in

support of his assertion that the medical records did not document "any significant impairments."

Tr. 12.  He notes that "[Dr. Williams'] records indicate that claimant's past medical history only

included minor hypertension, cervical carcinoma …, some mild osteoarthritis, and a past history

of Bells [sic] palsy."  *Id.* (citing Tr. 437).  However, Dr. Williams was not performing a complete

---

[2] "To be given a diagnosis of Raynaud's phenomenon, a patient must have a history of sensitivity to the cold and have episodic pallor or cyanosis of the distal portions of the digits (or both) after exposure to the cold…. It is not necessary to perform a provocative test (e.g., immersion of the patient's hand in ice water) to make a definitive diagnosis." Fredrick Wigley, *Raynaud's Phenomenon*, 9/26/02 New Eng. J. Med. 1001 (2002).

REPORT AND RECOMMENDATION – 6

1   medical examination of plaintiff; rather, he was diagnosing the cause of pain in her knee on

2   referral from her primary physician.  *See generally* Tr. 437-38.  Plaintiff's Raynaud's

3   phenomenon, which is not generally considered an orthopedic issue, would not have been relevant

4   to that inquiry.  In general, the record does not support the ALJ's conclusion that plaintiff's

5   Raynaud's phenomenon was not a medically determinable impairment.

6        Because the ALJ did not find that plaintiff's Raynaud's phenomenon was medically

7   determinable, he did not consider its effects, alone or in combination with her Bell's palsy.  The

8   Court concludes that remand is appropriate.  On remand, the ALJ should reconsider whether

9   plaintiff's Raynaud's phenomenon and Bell's palsy, alone or in combination, are severe

10  impairments.

11       **2.   The Letters of Drs. Ta and Holder**

12       Plaintiff also asserts that the ALJ erred "by failing to provide any reasons for rejecting the

13  opinions of Drs. Ta and Holder and simply dismissing their opinions as 'provid[ing] no benefit in

14  evaluating the claimant's impairments between June 1, 2005 and December 31, 2005.'"  Dkt. 10 at

15  13.  She contends that the opinions are retrospective and should have been considered in

16  determining whether fibromyalgia, depression, anxiety, and disassociative disorder had rendered

17  her disabled during the claimed period.  *Id.* at 12-13.  Defendant argues that the ALJ properly

18  ignored these opinions because neither doctor had treated or examined plaintiff prior to 2007.

19  Dkt. 14 at 6.[3]

20       In general, more weight should be given to the opinion of a treating physician than to a

21  non-treating physician, and more weight to the opinion of an examining physician than to a non-

22
    _____

23  [3] The parties also dispute whether a letter from Dr. Holder, sent to the Appeals Council after the ALJ's determination,
    should play into this Court's determination regarding the evaluations.  Dkt. 10 at 12, Dkt. 14 at 8-12.  Because the
    Court finds that remand is appropriate based on other evidence of legal error by the ALJ, it does not address this
    dispute.

REPORT AND RECOMMENDATION – 7

examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating

physician's opinion is not contradicted by another physician, the ALJ may reject it only for "'clear

and convincing reasons.'" *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

Where a treating physician's opinion is contradicted, the ALJ may not reject it without providing

"'specific and legitimate reasons' supported by substantial evidence in the record for doing so."

*Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this

by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his

interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747

(9th Cir. 1989).

"[M]edical reports are inevitably rendered retrospectively and should not be disregarded

solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). A medical opinion or

evaluation may be relevant even if several years have passed between the date last insured and the

date of the examination. *Id.* However, a retrospective opinion may be discredited if it is

inconsistent with, or unsubstantiated by, medical evidence from the period of claimed disability.

*Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

The ALJ gives as his reason for rejecting the evaluations that both of them were submitted

"well after [plaintiff's] date last insured." Tr. 14. The mere fact that the opinions were rendered

after the date last insured, without more, is not sufficient because under *Smith* such opinions are

still "relevant to assess the claimant's disability."[4] *Smith*, 849 F.2d at 1225. If the ALJ

disregarded the evaluations of Drs. Ta and Holder because, as defendant claims, they are

---

[4] The defendant cites *Macri v. Chater*, 93 F.3d 540 (9th Cir. 1996), for the proposition that the opinions of Drs. Ta and Holder may be given no weight because of when they were rendered. Dkt. 14 at 7. However, the *Macri* court merely stated that "[t]he opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status … is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam." 93 F.3d at 545. That court did not state that the opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status is entitled to no weight at all.

REPORT AND RECOMMENDATION – 8

1   "conclusory check-box forms" (Dkt. 14 at 7) or because the doctors diagnosed claimant with

2   impairments "not found to exist by any other doctor of record" (*id.* at 6), he did not state so in his

3   opinion.  This Court may not make inferences for the ALJ or affirm his decision based on grounds

4   that he did not specifically invoke.  *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

5        The evaluations of Drs. Ta and Holder provide medical evidence to support plaintiff's alleged

6   impairments including fibromyalgia, disassociative disorder, depression, and anxiety.  They

7   therefore have a direct impact on the credibility of plaintiff's reported mental symptoms and pain.

8   On remand, the ALJ should reconsider the weight to be given these evaluations, reevaluate

9   plaintiff's symptom testimony in light of the diagnoses, and make any additional findings

10  necessary to determine whether or not these impairments comprised medically determinable

11  severe impairments during the claimed period.

12       **3.   The ALJ's rejection of lay testimony.**

13       Plaintiff further claims that the ALJ erred by giving little or no weight to her husband's

14  testimony and evaluation.  Dkt. 10 at 11, 12.  In particular, she notes that the ALJ specifically

15  failed to discuss the functional evaluation filed by her husband, Arvind Nerurkar.  *Id*. at 17.

16  Defendant argues that any failure to discuss was harmless.  Dkt. 14 at 13-15.  The Court finds that

17  the ALJ did not give appropriate reasons for disregarding the testimony of Mr. Nerurkar.

18       Lay witness testimony as to a claimant's symptoms "is competent evidence that an ALJ

19  must take into account," unless he "expressly determines to disregard such testimony and gives

20  reasons germane to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir .2001).

21  Lay witnesses, particularly spouses or family members, may not be dismissed out of hand because

22  they are generally inclined to be partial to the plaintiff; rather, the ALJ must point out "evidence

23  that a specific [witness] exaggerated a claimant's symptoms *in order* to get access to his disability

REPORT AND RECOMMENDATION – 9

1    benefits" to support an allegation of partiality.  *Valentine v. Commissioner Social Sec. Admin.*, 574

2    F.3d 685, 694 (9th Cir. 2009) (emphasis in original).

3         The ALJ did briefly mention the hearing testimony of plaintiff's husband, Arvind Nerurkar,

4    and he appears to have credited it to the extent that it described activities inconsistent with

5    plaintiff's claimed impairments.  Tr. 14.  However, the ALJ did not discuss separately his

6    credibility finding for Mr. Nerurkar's testimony, instead asserting that "the date last insured was

7    unknown to both [plaintiff and her husband] at the time the medical records were produced" and

8    inferring that the hearing testimony embodied the "hindsight bias" of plaintiff and her husband.

9    *Id.*  Hindsight bias is not a reason germane to this particular witness; indeed, the same reason

10   could be used to reject lay witness testimony in any case where the date last insured has passed

11   before hearing testimony is given.  Even if there were evidence of such bias, however, it would not

12   apply to Mr. Nerurkar's functional evaluation, which was filed in 2006, apparently with no

13   knowledge of plaintiff's date last insured.  *See generally* Tr. 181-90.  As plaintiff noted, the ALJ

14   failed to address her husband's functional evaluation at all.

15        Defendant asserts that because Mr. Nerurkar's written and oral testimony contradicted

16   plaintiff's assertions regarding her impairments, the ALJ's error in ignoring the statement was

17   harmless.  Dkt. 14 at 13-15.  The Court does not agree.  While Mr. Nerurkar's functional

18   evaluation does list significantly fewer limitations than plaintiff's evaluation, *compare* Tr. 172

19   *with* Tr. 187, the two are consistent in terms of the effects of her Bell's palsy and Raynaud's

20   syndrome.  Mr. Nerurkar's functional report states that Bell's palsy had impaired plaintiff's vision

21   and caused frequent migraines (Tr. 174) that she could only read for short periods of time (Tr.

22   171) and that she was very sensitive to bright light.  Tr. 174.  He also stated that her Raynaud's

23   phenomenon made her sensitive to heat and cold, to the point where she sometimes had to spend

REPORT AND RECOMMENDATION – 10

hours in bed after exposure to a cold environment.  *Id.*  Mr. Nerurkar also wrote about plaintiff's mental symptoms, noting her poor memory and concentration (Tr. 172) and difficulties functioning socially.  Tr. 171.[5]

The ALJ did not give sufficient reasons when he disregarded the functional evaluation and testimony of plaintiff's husband.  Because that testimony was relevant to determinations regarding the severity of plaintiff's impairments, and because the ALJ did not proceed to step three, his error is not harmless.  On remand, the ALJ should reevaluate the weight to be given this testimony in light of the analysis above.

**B.    Necessity of a medical expert**

Finally, plaintiff argues that the ALJ should have called a medical expert to determine the date of onset of disability.  Dkt. 10 at 16.  She contends that the letters of Drs. Ta and Holder comprise substantial evidence of disability after the date last insured, and that the ALJ should therefore have called the expert to determine whether that disability extended to the claimed period.  *Id.*  Defendant responds that the letters are "neither probative nor significant" and that the ALJ could not be required to call an expert based on evidence of such minimal weight.  Dkt. 14 at 12-13.

Under SSR 83-20, upon a finding of disability an ALJ must adopt the claimant's alleged onset date if that date is consistent with medical and other evidence.  "If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence

---

[5] These statements are consistent with plaintiff's testimony and statements regarding her impairments.  *E.g.* Tr. 183 (plaintiff's eyes got dry and blurry and she could not "read very long or focus on anything long"; when exposed to cold, plaintiff got very cold and experienced sharp burning pain in her fingers), 189 (plaintiff was sensitive to bright and dim light), 187 (plaintiff had difficulty following instructions and was easily distracted); *see also* Tr. 34, 39 (hearing testimony regarding plaintiff's headaches and sensitivity to cold)

which is available to make the determination." *Armstrong v. Commissioner of Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) (internal quotations omitted).  If a determination of disability is not made, however, the ALJ need not call a medical expert.  *Sam v. Astrue*, 550 F.3d 808, 810-11 (9th Cir. 2008).

As the Court explained above, the reason given by the ALJ for rejecting the evaluations of Drs. Holder and Ta is not sufficient.  However, a finding that the ALJ failed to properly consider the evaluations does not in and of itself necessitate a finding that the evaluations conclusively establish that plaintiff was disabled.  Upon remand, the ALJ should call a medical expert if he determines that plaintiff was disabled and that the date of onset of that disability is not clear from the record.

## V.  CONCLUSION

For the foregoing reasons, the Court recommends that this case be **REVERSED** and **REMANDED** for further proceedings.  Upon remand, the ALJ should: (1) reevaluate the evaluations of Drs. Ta and Holder and determine whether plaintiff's fibromyalgia and mental impairments were medically determinable during the claimed period; (2) reconsider the weight to be given various testimony as outlined above; (3) allow the plaintiff to supplement the record as necessary; (4) determine whether plaintiff's impairments or combination of impairments were "severe" for the purposes of step two; (5) proceed with the remainder of the five-step analysis if necessary; and (6) call a medical expert if there is any ambiguity as to onset date upon a determination that plaintiff was in fact disabled.

A proposed order accompanies this Report and Recommendation.

DATED this 10th of May, 2010.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION – 12